Filed 6/25/21  P. v. Torricellas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>THERESA TORRICELLAS,<br><br>　　Defendant and Appellant. | D077815<br><br><br>(Super. Ct. No. CR72156) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Alan L. Amann and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

An information filed on January 23, 1985, charged defendant Theresa Torricellas and codefendant Daniel McGinnis with murder (Pen. Code,[1] § 187, subd. (a); count 1) and robbery (§ 211; count 2). The information additionally alleged arming and gun-use enhancements as to both counts. (§§ 12022, subd. (a) & 12022.5, respectively.) In March 1985, defendant entered a guilty plea to second degree murder and admitted the arming enhancement in exchange for a maximum sentencing exposure of 16 years to life and dismissal of the robbery count and personal gun-use enhancement. The court at the April 1985 sentencing followed the terms of the plea and sentenced defendant to 15 years to life plus one year for the arming enhancement, for a total term of 16 years to life in prison.

In January 2019, defendant filed a pro. per. petition to vacate her murder conviction pursuant to section 1170.95 (hereinafter, Petition). After further briefing from the parties, the court on July 8, 2020, summarily denied defendant's Petition without issuing an order to show cause (OSC), finding defendant was statutorily ineligible for section 1170.95 relief. We affirm.

OVERVIEW

On or about November 8, 1984, defendant met Paul Vernon Henry at a motel where the father of codefendant McGinnis was staying. Henry owed McGinnis money and the three went to the bank in Henry's car. At an ATM machine, defendant used Henry's bankcard to withdraw $200. Defendant saw from the bank receipt that Henry had more money in his account. She passed this information on to McGinnis.

After stopping back at the motel, the three drove to Mission Valley. Defendant selected Mission Valley because it was not a place that would draw attention if "you're going to do it." She had in mind that Henry was

---

[1]     All further statutory references are to the Penal Code.

2

going to be killed. Defendant sat behind Henry, who was in the front passenger seat. She held a 12-gauge shotgun pointed at Henry's back. McGinnis made clear to Henry that the gun would be used if he did not do what he was told.

At a remote location in Mission Valley, McGinnis, who now held the shotgun, ordered Henry out of the car. Defendant also got out and looked to see if anyone was around. Defendant asked McGinnis if he wanted her to shoot Henry. She said that she walked away and heard the shotgun, then returned. Defendant and McGinnis fled to Mexico together, where they were ultimately arrested. Following her arrest, defendant sent two letters to McGinnis in which she took credit and blame for the shooting of Henry.[2]

On January 9, 2019, defendant filed the Petition. The People on May 26, 2019, filed an initial response to the Petition challenging (1) the constitutionality of Senate Bill No. 1437 (Sen. Bill 1437), which enacted section 1170.95, and (2) defendant's statutory eligibility for resentencing. After a brief stay of proceedings, defendant, now represented by counsel, on June 29, 2020 filed a reply to the prosecution's response. As noted *ante*, the court on July 8, 2020, summarily denied defendant's Petition without issuing an OSC.

The court in its July 8 order found that, although defendant was not the actual killer, she "directly aided and abetted the murder and was also 'a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e)." The court based its finding on the colloquy between defendant and the court when defendant was initially sentenced, which the

---

[2] We have not considered the content of either letter in determining defendant's eligibility for relief under section 1170.95.

July 8 order detailed as follows: "The record of Petitioner's plea of guilty to second degree murder on March 20, 1985, reflects a thorough examination of Petitioner by the Court with respect to the events surrounding the murder. Petitioner stated under penalty of perjury that she was aware the shooter wanted to kill the victim and that they were taking him to a remote location to kill him. She held the firearm in the car and then gave it to the shooter knowing the victim would be killed. She also acted as a lookout. Assuming Petitioner were to testify to all of the allegations contained in her current declaration [she submitted in support of her Petition], it would nonetheless be insufficient to negate the statements she made to the Court under oath during her change of plea. . . . Section 1170.95 provides relief only for those defendants who suffer a murder conviction based on a theory of murder that is no longer permitted. It is not an opportunity to use the statute to allege a basis for withdrawal of a plea, to allege incompetence of counsel, or to otherwise appeal the conviction years after such opportunity has passed."

DISCUSSION

A. *Guiding Principles*

Effective January 1, 2019, Sen. Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending section 188, which defines malice, to add a requirement that all principals to a murder must act with express or implied malice to be convicted of that crime. To accomplish these goals, Sen. Bill 1437 redefined "malice" in section 188, and narrowed the classes of persons

4

liable for felony murder under section 189. (Stats. 2018, ch. 1015, §§ 2–3.) Hereafter, in order to be convicted of felony murder, a defendant who was neither the actual killer nor a direct aider and abettor to the murder must have been a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(3); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Sen. Bill 1437 also established a procedure for the defendants previously convicted of murder to seek resentencing if they believe they could not currently be convicted of that crime under the amended provisions of sections 188 and 189. (Sen. Bill 1437, § 4 [enacting newly codified section 1170.95].) Thus, section 1170.95 allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).)

In its initial review of whether a petitioner has made a threshold showing that he or she falls within the provisions of section 1170.95, the court examines whether the petitioner has stated eligibility for relief. A petitioner must allege: (1) an accusatory pleading was filed against him or her allowing prosecution under the felony murder rule or the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1)); (2) he or she was convicted of first or second degree murder following a trial, or pleaded guilty to first or second degree murder in lieu of a trial at which he or she could have been so convicted (*id.*, subd. (a)(2)); and (3) he or she could not today be convicted of first or second degree murder because of the 2019 amendments to sections 188 and 189 (*id.*, subd. (a)(3)).

5

If the petitioner meets this facial showing of eligibility, the court must appoint counsel and entertain briefing from the prosecutor and appointed counsel. If, after briefing, the petitioner has established a prima facie case he or she is entitled to relief, i.e., if a showing regarding his or her eligibility has been made, the court must issue an OSC, and thereafter hold a full hearing to determine whether the petitioner is entitled to relief. (§ 1170.95, subds. (c) & (d)(1).)

We apply a de novo standard of review to a trial court's denial of a defendant's section 1170.95 petition. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, fn. 8 (*Verdugo*), review granted Mar. 18, 2020, S260493; cf. *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 [statutory construction questions are reviewed de novo].)

B. *Analysis*

We independently conclude defendant is statutorily ineligible for relief under section 1170.95, subdivision (a)(3). Defendant admitted under oath during questioning by the court at her plea colloquy that she: (1) set in motion the plan to murder Henry by telling McGinnis that Henry had money remaining in his bank account, after she made the cash withdrawal from his account; (2) suggested McGinnis drive to what was then a remote location in Mission Valley "[b]ecause [she] felt like, well, if you're going to do it, you know, at least go someplace not to draw attention"; (3) knew when they drove to Mission Valley that Henry "was going to be killed" for his money; (4) sat in the backseat of the car directly behind Henry and pointed a shotgun at his back, as the three of them traveled in Henry's car to Mission Valley; (5) offered to shoot Henry herself, as she admitted to the court she asked McGinnis "if he wanted [her] to do it"; (6) ensured when they stopped the car there was nobody around and otherwise acted as a lookout while McGinnis

6

killed Henry with the shotgun; and (7) fled with McGinnis to Mexico after they killed Henry.

These statements by defendant show that, although she was not Henry's actual killer, "with the intent to kill [she] *aided, abetted*, counseled, commanded, induced, solicited, requested, or *assisted* the actual killer in the commission of murder in the first degree" (§ 189, subd. (e)(2), italics added); and/or she "was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (*Id.*, subd. (e)(3); see Sen. Bill 1437, § 1, subd. (g) [providing a "conviction for murder requires that a person act with malice aforethought" and a "person's culpability for murder must be premised upon that person's own actions and subjective mens rea"].)

We further conclude it was proper for the court to consider defendant's statements in deciding eligibility, or lack thereof, under section 1170.95, as they were part of the factual basis documentation. (See *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330 [noting that, "because a petitioner is not eligible for relief under section 1170.95 unless he or she was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine [citation], the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [noting a court may deny a section 1170.95 petition without appointing counsel where petitioner is indisputably ineligible for relief as a direct perpetrator of second degree murder]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted, Mar. 18, 2020, S260598 [concluding record, including prior appellate court

7

opinion, was sufficient to determine a direct aider and abettor theory of murder liability to exclude petitioner from section 1170.95 eligibility].)

As the People note, defendant urges her statements in connection with her plea should not be used because they allegedly conflict with the plea form providing she violated section 187 (second degree murder) and the arming enhancement in section 12022, subdivision (a) by "participating in a robbery of Paul Henry; during the course of the robbery Paul Henry was killed by a shot gun blast."

However, we independently conclude there is no conflict. In contrast to the one-sentence summary statement in the plea form that was bereft of any detail regarding the circumstances of Henry's murder, defendant answered questions from the court while under oath that, as summarized *ante*, established she aided and abetted in the murder with the intent to kill, and/or was a major participant in the underlying felony and acted with reckless indifference to human life.

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.


BENKE, Acting P. J.

WE CONCUR:



HALLER, J.



O'ROURKE, J.